

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

## EASTERN DIVISION

JOAN WISNIEWSKI

           **Plaintiff**

    vs.

ASSET ACCEPTANCE CAPITAL CORP.,
a Delaware Corporation;
ASSET ACCEPTANCE, LLC, a subsidiary and
agent of ASSET ACCEPTANCE CAPITAL CORP.,
and SANJAY S. JUTLA and ALLEN GUNN,
individually and as employees and agents for
ASSET ACCEPTANCE, LLC, a subsidiary and
agent of ASSET ACCEPTANCE CAPITAL CORP.

            **Defendants**

Case No.:  08 CV 2793

Judge Lefkow

Magistrate Judge Schenkier

## NOTICE OF FILING

# F I L E D

JUL 1 0 2008  YM

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

TO:  HINSHAW & CULBERTSON
    Attention: Jennifer Weller
    222 N. LaSalle Street, Suite 300
    Chicago, Illinois 60601

PLEASE TAKE NOTICE that on July 10, 2008, I filed with the Clerk for the United States District Court the Plaintiff's Memorandum of Law opposing the Defendants motion to dismiss, a copy of which is attached hereto and herewith served upon you.

JAMES F. WISNIEWSKI

James F. Wisniewski
P.O.Box 2295
Orland Park, Illinois 60462
708.590-6671

## CERTIFICATE OF MAILING

I, James F. Wisniewski, an attorney, certify that I mailed Plaintiff's Memorandum of Law in opposition to the Defendant's Motion to Dismiss to Jennifer Weller of HINSHAW & CULBERTSON, 222 N. LaSalle Street, Suite 300, Chicago, Illinois 60601 on or before the hour of 4:30 p.m. on July 10, 2008, by depositing same with the U.S. Post Office located across the street from the U.S. District Courthouse with the proper postage prepaid.

JAMES F. WISNIEWSKI

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| JOAN WISNIEWSKI<br><br>            Plaintiff<br><br>       vs.<br><br>ASSET ACCEPTANCE CAPITAL CORP.,<br>a Delaware Corporation;<br>ASSET ACCEPTANCE, LLC, a subsidiary and<br>agent of ASSET ACCEPTANCE CAPITAL CORP.,<br>and SANJAY S. JUTLA and ALLEN GUNN,<br>individually and as employees and agents for<br>ASSET ACCEPTANCE, LLC, a subsidiary and<br>agent of ASSET ACCEPTANCE CAPITAL CORP.<br><br>            Defendants | Case No.: 08 cv 2793<br><br>Judge Lefkow<br><br>Magistrate Judge Schenkier<br><br># F I L E D<br><br>JUL 1 0 2008  YM<br>Jul 10, 2008<br>MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT |

## MEMORANDUM OF LAW  IN OPPOSITION TO RULE 12 b(6) MOTION TO DISMISS

Plaintiff Joan Wisniewski, by and through her attorney James F. Wisniewski submits this memorandum of law in opposition to the motion to dismiss pursuant to Rule 12(b)(6) filed by the defendants and states as follows:

### PREFATORY REMARKS

The pivotal question at the core of Asset's 12(6) Motion is whether the dismissal order of April 14, 2005 was a final adjudication on the merits; if it was, that order precluded any subsequent lawsuits brought by Asset Acceptance.   This issue, like most of the issues in the defendant's motion, involves the determination of certain facts more appropriately decided after the conclusion of discovery.   In 2004 Asset filed a lawsuit against Joan Wisniewski under case 04 M1 188227. (Compl. ¶ 13)   Joan Wisniewski filed a motion for involuntary dismissal of the lawsuit pursuant to 735 ILCS 5/2-619(a).   Asset's attorney, Arthur T. Bernstein, requested a briefing schedule of 30 days for Asset to respond and 14 days for Joan Wisniewski to reply.

Judge McWilliams set the hearing date for April 14, 2005. (Compl. ¶ 14)   Asset's attorneys never filed a response,  and  at the hearing elected to stand on the complaint.  On April 14, 2005, Judge Thomas M. Donnelly granted Joan Wisniewski's §2-619 motion and did not allow Asset to file an amended complaint but dismissed that lawsuit, ordering that each side bear their respective costs.  (Compl. ¶ 15 and Asset Motion Exhibit A)   Illinois Supreme Court Rule 273 holds that an involuntary dismissal of an action, other than for lack of jurisdiction, improprer venue or failure to join an indispensable party, is considered an adjudication upon the merits of a cause constituting a final, appeallable order and a bar to subsequent suits between the parties arising out of the same transaction.     Contrary to the assertion in Asset's memorandum, Plaintiff's attorney did not draft the April 14th   order, which will be discussed in depth hereinafter.

## STANDARD GOVERNING A RULE 12(b)6) MOTION

In deciding a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all factual allegations in the complaint, including all the reasonable inferences drawn from those facts, in a light most favorable to the plaintiff. *Scheuer  v. Rhodes*, 416 U.S. 232,236, 94 S.Ct. 1683, 1686, 40 L.Ed2[d] 90 (1974) and *Maple Lanes, Inc. v. Messer*, 186 F.3[d] 823, 824, 825 (7th Cir. 1999)  Rule 12(b)(6) does not require that a complaint contain all the evidence required to prevail at trial, to do so would violate Rule 8(e) of the Federal Rules of Civil Procedure. *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)

## APRIL 14th ORDER WAS A FINAL ADJUDICATION

Illinois Courts have repeatedly held that an order is final if it terminates the litigation between the parties on the merits or disposes of the rights of the parties either on the entire controversy or a definite and separate part thereof. *Lozman v. Putnam*, 328 Ill.App.3[d] 761, 768,

767 N.E.2d 805, 811 (1st Dist. 2002)    A final order is one that concludes the litigation between the parties. *Baltimore Orioles, Inc. v. Major League Baseball Players, Ass'n.*, 805 F.2$^d$ 663,666 (7th Cir. 1996) citing *Firestone Tire & Rubber Co. v. Risjord,*  449 U.S. 368,373, 101 S.Ct.669 673, 66 L.Ed.2$^d$ 571 (1981) Also See:  *Flores v. Dugan,* 91 Ill.2$^d$ 108, 112, 453 N.E.2$^d$ 480 (1982) and *Cabrera v. First Nat. Bank of Wheaton,* 324 Ill.App.3$^d$ 85, 100, 753 N.E.2$^d$ 1138, 1151 (2$^d$ Dist. 2001)  A motion brought under 735 ILCS 5/2-619 of the Illinois Code of Civil Procedure seeks the dismissal of the entire action.  Section 2-619 of the Code of Civil Procedure is entitled "Involuntary dismissal based upon certain defects or defenses".   The definition of involuntary is without choice.   Illinois Supreme Court Rule 273 applies only to involuntary dismissals such as occur when a trial judge grants a section 2-619 motion to dismiss.  Downing v. Chicago Transit Authority,  162 Ill.2$^d$ 70, 75,  642 N.E.2$^d$ 456, 458 (1994)    Under Supreme Court Rule 273, "an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits." The Wisniewski motion to dismiss Asset's lawsuit was brought pursuant to 735 ILCS 5/2-619(a) 2 & 9 and was not brought because of a lack of jurisdiction, improprer venue or failure to join an indispensable party, the only three recognized exceptions to an order being a final adjudication.   [A file stamped copy of the Wisniewski §2-619 motion  is attached to this memorandum as Exhibit 1 to show the reason for the April 14th order. Wisniewski  attaches said motion pursuant to Fed.R. Civ.P. 10(c)  which recognizes that if pleadings are referred to in the plaintiff's complaint and are central to the claim they are considered part of the pleadings.  See: Cont'l Cas.Co. v. Am Nat'l Ins. Co., 417 F.3$^d$ 727, 731 n.3 (7th Cir. 2005)] The Court in granting the Wisniewski  motion to dismiss under Section 2-619 made an adjudication on the merits, was a final order  disposing  of the rights of the parties concluding  the litigation between the parties and resolving  the issue  of costs.

Asset's argument is that the inclusion of the words "without prejudice" in the order means that there was not a final adjudication on the merits. That argument ignores the mandate of Illinois Supreme Court Rule 273 that involuntary dismissal of an action operates as an adjudication upon the merits with just three specified exceptions. In determining whether an order is final, an appellate court looks to its substance and effect rather than its form. *In re MM*, 337 Ill.App.3$^d$ 764, 771, 786 N.E.2$^d$ 654, 665 (2$^d$ Dist. 2003)    Here, a §2-619(a)2 & 9 motion was filed, a briefing schedule and hearing date set. Asset filed no response to challenge the issues raised in Wisniewski's motion to dismiss, and at the hearing did not request additional time to file their response or for leave to file an amended complaint; rather, they elect to stand on their complaint and the Court grants the motion to dismiss. An election to stand on the complaint followed by dismissal with no right given to plead over is a final order and appealable. *In Re Estate of Hopkins*, 166 Ill.App.3$^d$ 652, 655, 520 N.E.2$^d$ 415, 417 (2$^d$ Dist. 1988); *Branch v. European Autohaus, LTD.*, 97 Ill.App.3$^d$ 949, 951-52, 424 N.E.2$^d$ 6, 8 (1st Dist. 1981) and *Martin v. Masini*, 90 Ill.App.2$^d$ 348, 353, 232 N.E.2$^d$ 770, 773 ( 2$^d$ Dist. 1967)    That is exactly what occurred her., Asset was not given leave to replead or file an amended complaint, the motion was granted and case was dismissed. The motion to dismiss was brought pursuant to 735 ILCS 5/2-619(a) 2 & 9, that the plaintiff lacked the legal capacity to sue and the claim asserted against the defendant was barred by an affirmative matter because the plaintiff failed to state a cause of action. A dismissal of a complaint for failure to state a claim is an adjudication on the merits. *Bentley v. Glen Shipley Enterprises, Inc.*, 248 Ill.App.3$^d$ 647, 650, 619 N.E.2$^d$ 816, 818 (4th Dist. 1993) and *McGann v. Illinois Hospital Ass'n.*, 172 Ill.App.3$^d$ 560, 568-569, 526 N.E.2$^d$ 902, 906-07 (4th Dist. 1988)

Asset cites the case of *DeLuna v. Treister* asserting that the inclusion of the words "without prejudice" signals the court's intention to allow the plaintiff to re-file. The April 14th

4

order does not indicate the plaintiff was allowed to file an amended complaint or replead.    The Illinois Supreme Court in *DeLuna* noted that on the day when the order was entered, "the plaintiff did not include in the order a statement allowing the plaintiff {which would have been Asset} to amend his action or file the documents required by section 2-622" a final adjudication occurred. *DeLuna* 708 N.E.2$^d$ at 344   This Supreme Court's decision in *DeLuna* is consistent with the decision in *Martin v. Masini*. The only motion pending on April 14th was Wisniewski's §2-619,  yet the order refers to it as a §2-606 motion.    Section 2-606 of the Illinois Code of Civil Procedure describes exhibits, not motions.    If as Asset contends this was a §2-606 motion and not a §2-619(a)2 & 9 motion resulting in a final order constituting an adjudication on the merits, why did the order not include a statement allowing Asset to amend the complaint by granting Asset leave to file the documents or exhibits needed? Illinois Civil Procedure allows a party to amend its pleadings any time before final judgment. 735 ILCS 5/2-616(a)   The strong policy of Illinois law is to decide causes of actions on their merits by allowing timely amendments. *Kostecki v. Dominick's Finer Foods, Inc.*,   361 Ill.App.3$^d$ 362, 836 N.E.2$^d$  837, 846 (1st Dist 2005) In *Kostecki*  plaintiff's complaint was involuntarily dismissed although the order did not state it was with prejudice; plaintiff  within 30 days seeks to file a second-amended complaint and is denied.   The Appellate court stated that amending the complaint after a final adjudication is not timely. *Kostecki* at 847.   When all of the law is read together, the answer as to why Asset was not allowed to amend is because they never made that request.  Now after the hearing,  Supreme Court Rule 273 applies to the granting of a §2-619(a)2 & 9 making that order a final order and an adjuducation on the merits.    In state court, as in federal court, when the court rules on a motion to dismiss it is required to construe all the pleadings in favor of the non-moving party.  If this was a case of just missing exhibits, Asset would have been granted leave to amend its complaint by attaching the missing exhibits. In fact, the *DeLuna* decision  questioned

why DeLuna did not request leave to satisfy section 2-622, and the Supreme Court concluded because DeLuna wanted to challenge the constitutionality of the 2-622 requirement. The Supreme Court in *DeLuna* held that when a plaintiff could by requesting leave of court to amend his complaint and choses not to do so and the action is involuntarily dismissed, then Rule 273 "operated in precisely the manner it was intended" by preventing needless litigation. *DeLuna* 708 N.E.2$^d$ at 345 This is consistent with prior case law. See: *Hopkins*, *Branch* and *Martin* supra. Supreme Court Rule 273 will be applied in its plain terms in situations where the same party obtains an involuntary dismissal in the initial case and in the subsequent case asserts that the original dismissal operated as an adjudication on the merits. Moreover, if Asset believed that no adjudication on the merits occurred with the entry of the April 14th order, why then did Asset not disclose in the complaint for that second lawsuit that it was a re-filed lawsuit -- that disclosure is required in Federal Court and under the Illinois Code of Civil Procedure, specifically 735 ILCS 5/13-217. The purpose of Supreme Court Rule 273 is "to curb the number of times a plaintiff can resurrect a dismissed action". *DeLuna* 708 N.E.2$^d$ at 345 The purpose of Rule 273 should not be thwarted by concealing the fact that the lawsuit is re-filed. Law does not exist in a vacuum, it exists in the real world which requires rules to be applied to actions to attain desired behavior.

Defendant asserts the April "order was drafted by William J. McGann Wisniewski's counsel" is untrue. The order was was in fact drafted by Asset's attorney from the lawfirm of McMahan & Sigunick. The only motion pending on April 14th was Wisniewski's §2-619, yet the order refers to it as a 2-606 motion. Section 2-606 of the Illinois Code of Civil Procedure describes exhibits not motions. The reasonable inference here is that McMahan & Sigunick were trying to soften the effect of not filing a response to the §2-619 motion to dismiss and then having the lawsuit dismissed. This is not merely conjecture, since if this was a case of a missing

exhibit, the most novice attorney would have allowed asked the Court to allow Asset to correct that mistake by filing an amended complaint.   At the time of the hearing, William McGann was hospitalized having suffered a massive heart attack in March and was hospitalized from March until July 2004.  The April 14th order is in two different handwritings.  At the hearing, Joan Wisniewski was represented by James Wisniewski, who knows how to correctly spell his last name.  A close examination of the caption of that order reveals Wisniewski is misspelled  as Wisnewski  – the second i after the n is omitted  – a common mistake with one not familiar with the correct spelling and doing it phoenetically.    Asset's attorney drafted the body of the order on an order that was begun by Wisniewski and only consisted of the information block.

## PLAINTIFF'S FDCPA CLAIMS ARE NOT TIME BARRED

After Asset's in house attorney obtained the September 27th order the harassing telephone calls to the plaintiff resumed and are continuing.   (Compl. ¶ 34)   Defendant claims this is vague; however, the difference between Federal practice and notice pleading and State practice and fact pleading, is that the latter require more specificity.  After removing this lawsuit from state court to federal court, the defendant cannot now argue that the fact pleading requirements of state court should apply.  "Each averment of a pleading shall be simple, concise and direct." Rule 8(e)  of the Federal Rules of Civil Procedure.  Pleadings are sufficient if they provide a defendant with notice of the claims; a complaint does not have to include all the operative facts to state a claim. *Scott  v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999)    That simple and concise statement of continuing harassing telephone calls brings the plaintiff within the one year statute of limitations.  Likewise, the Court is required to accept as true all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th Cir. 2003)  Defendant's objections to inclusion of activity

7

beyond the one year timeframe may be correct for the federal claim under FDCPA (Count 1) but that same activity is admissible under the state claim under the Illinois Collection Agency Act which has a five year statute of limitations. 225 ILCS 425/9.5.

CONSPIRACY

The allegations comprising Wisniewski's conspiracy claim are not limited to actions taken in filing the second lawsuit after the order of April 14th, but also include the actions taken after the re-filed lawsuit had been dismissed for want of prosecution. (Compl. ¶ 91)    Plaintiff alleges that the defendants and co-conspirators, Allen Gunn and Sanjay S. Jutla, conspired with unknown parties to insure the original court file was short {missing and unavailable} so as the Judge to whom they would present their motion for a voluntary dismissal would not have the original court file and be able to see that the case had been transferred to 1501 or that there was a DWP which had not been vacated.    That  approximately  2-3 weeks after that  order was obtained, the plaintiff again began receiving telephone from the various employees of Asset Acceptance, LLC., attempting to collect the alleged debt from the  plaintiff. (Compl. ¶ 91)    The entry of the order dismissing the case for want of prosecution terminated any claim Asset possessed.    Asset attempts to portray Gunn's and Jutla's action as presenting a motion for voluntary dismissal in the wrong room is disingenuous, especially since such a motion {735 ILCS 5/2-1009(a)} requires notice to each party and their attorney and upon the payment of costs, none of which occured. (Compl. ¶ 34) Asset's second lawsuit was DWP'd  on April 10, 2006 by Judge Michael Thomas Healy. (Compl. ¶ 30)   On June 28, 2006, Asset Acceptance, by and through their in house attorney, Sanjay S. Jutla,  presented a motion to correct the record, which in part stated that motion was "brought within 60 days of the dismissal", the motion which was denied by Judge Laurence Dunford.  (Compl. ¶ 32) Judge Dunford's order stated that if Asset Acceptance wished to move to vacate the dismissal order, they would have to do

8

so pursuant to the requirements 735 ILCS 5/2-1401.    Asset Acceptance's attorney, Sanjay S. Jutla, the attorney who presented the motion denied by Judge Dunford received a copy of Judge Dunford's order. (Compl. ¶ 32)   On September 27, 2006, five months after the case was dismissed for want of prosecution, and three months after Judge Dunford denied the "motion to correct the record" Asset Acceptance, by and through their in house attorney, Sanjay S. Jutla, presented a motion to dismiss without prejudice a lawsuit that had already been dismissed, a dismissal that Sanjay Jutla unsuccessfully attempted to vacate. (Compl. ¶ 34)    The question is WHY?    The plaintiff's complaint asserts the answer is so that Asset can resume their harassing telephone calls to the plaintiff.    There are two exceptions to the intra-corporate immunity doctrine under which no conspiracy can exist between a corporation and its agents; the first exception is where the agent acts out of self interest or where the agent conspsires with a third party.   *Zic v. Italian Government Travel Office*, 130 F.Supp.2$^d$ 991, 997 (N.D.Ill. 2001) citing *Mehl v. Navistar Int'L Corp.*, 670 F.Supp. 239, 241 (N.D.Ill. 1987)   The Illinois Supreme Court has held that a plaintiff is not required to allege facts with precision when the necessary information to do so is within the knowledge and control of the defendants and unknown to the plaintiff.   *Adcock v. Brakegate, Ltd.*, 164 Ill.2$^d$ 54, 645 N.E.2$^d$ 888, 895 (1994)  That because of this unequal knowledge, the Illinois Supreme Court has held that a plaintiff may show the existence of a civil conspiracy by circumstantial evidence because a conspiracy is never susceptible to direct proof.   *McClure v. Owens Corning Fiberglas Corp,* . 188 Ill.2$^d$ 102,  134, 720 N.E.2$^d$ 242, 258 (1999)   Contrary to the attempt to portray Gunn and Jutla's actions as an innocent  procedural mistake however, the plaintiff asserts that the only purpose, especially when one considers that the complaint in the second lawsuit never stated it was a re-filed action and that the file was short so that the Court would not know it had no jurisdiction to enter an order of voluntary dismissal because of a DWP enter 5 months earlier, was that Gunn and Jutla were acting out of self interest to conceal their incompetence from their principal and create the

9

impression they still could pursue Wisniewski, which is why the telephone calls resumed approximately 2-3 weeks later.   Wisniewski also asserts the existence of a valid civil conspiracy claim because Allen Gunn and Sanjay S. Jutla, conspired with unknown parties to insure the original court file was short {missing and unavailable} so as the Judge to whom they would present their motion for a voluntary dismissal, preventing the Court from learning truth about the status of the case and in all likelihood refusing to enter the order.   What is the purpose of a voluntary dismissal order on a case that has already been dismissed for want of prosecution for 5 months?   The defendants Gunn and Jutla are Illinois attorneys and were bound by the Illinois Rules of Professional Conduct as set forth in Illinois Supreme Court Rule 799 et. seq.

## MALICIOUS PROSECUTION

The Illinois Supreme Court adopted the approach in The Restatement (Second) of Torts as to what satisfies the favorable termination requirement, looking beyond the type of disposition that was obtained in the previous action when determining if that termination is indeed "favorable" for purposes of a malicious prosecution action. Specifically, the Restatement provides as follows:

> Termination in favor of the person against whom civil proceedings are brought may be terminated in favor of the person against whom they are brought *** by (1) the favorable adjudication of the claim by a competent tribunal, or (2) the withdrawal of the proceedings by the person bringing them, or (3) the dismissal of the proceedings because of his failure to prosecute them.  A favorable adjudication may be by a judgment rendered by a court after trial, or upon demurrer or its equivalent. In either case the adjudication is a sufficient termination of the proceedings, unless an appeal is taken. *** Whether a withdrawal or an abandonment constitutes a final terminationof the case in favor of the person against whom the proceedings are brought and whether the withdrawal is evidence of a lack of probable cause for their initiation, depends upon the circumstances under which the proceedings are withdrawn."

(Emphasis added.) Restatement (Second) of Torts sec. 674, Comment j  (1977).

The  Court  noted  that  the  Restatement  approach  has  been  expressly  adopted  by various courts across the nation (citations omitted ) and allows dispositions which do not reach

10

the merits of the underlying case to satisfy the favorable termination requirement in certain circumstances. The Court noted that "Under this approach, whether or not the requirement is met is to be determined not by the form or title given to the disposition of the prior proceeding, but by the circumstances under which that disposition is obtained." As a result, terminations which do not rise to the level of adjudications on the merits may satisfy the favorable termination requirement and voluntary dismissal or DWP can now serve as the basis for a malicious prosecution lawsuit. The Court specifically noted and cited case of the disingenuous plaintiff can merely nonsuit his or her frivolous lawsuit in order to guard against a future malicious prosecution action. See Arora v. Chui, 279 Ill.App3[d] 321, 336, 664 N.E.2[d] 1101 (1996) This compelled the Illinois Supreme Court to hold that even voluntary dismissals to serve as a basis for malicious prosecution was consistent with allowing a nolle prosequi may serve as a favorable termination. *Swick v. Liautaud*, 169 Ill. 2[d] 504, 513, 662 N.E.2[d] 1238 (1996). The Court noted that the adaptation of the "Restatement's position best balances the right of citizens to have free access to our courts and the right of the individual to be free from being hauled into court without reason, thereby better serving the interests of justice." The Illinois Supreme Court adopting the Restatement standard also makes the circumstances involving the termination of the prior legal proceedings a question of fact not law.

As to the issue of special damage or injury, Plaintiff's complaint alleges that she suffered "damages, both physical and emotional, as well as aggravation and inconvenience, mental distress" which satisfies the special damage pleading requirement. (Compl. ¶ 110)

## ASSET ACCEPTANCE CAPITAL CORP. IS A DEBT COLLECTOR

Asset Capital Corp. cites Scally v. Hilco Receivables to claim it is not a debt collector, but a creditor. The Fair Debt Collection Practices Act distinguishes between two mutually exclusive categories: creditors, who are not covered by the Act {15 U.S.C. 1692a(4)} and debt

collectors, who are covered by the Act {15 U.S.C. 1692a(6).    The question is how to determine the status to determine who is covered by the Act.  The court in Scally answered that question – "Assignees of debt already in default at the time of assignment("bad debt") are considered debt collectors subject to the FDCPA."  Scally v. Hilco Receivables, LLC. 392 F.Supp.2$^d$ 1036,1037 (N.D. Ill. 2005)  Plaintiff's complaint alleges that Defendant, Asset Acceptance Capital Corp., is engaged in the purchase and collection of defaulted  accounts receivable acquired from consumer credit originators, primarily credit card issuers which it then  assigns to subsidiaries to collect.    . (Compl. ¶ 6, 7, 11 & 12)   The Scally court was not the first court to use the distinction between these two categories, another court noted that the term debt collector means any person who regularly collects or attempts to collect directly or indirectly debts owed or due.  *Schlosser v. Fairbanks Capital Corp.*, 323 F.3$^d$ 534, 536 (7th Cir. 2003)   The  Schlosser court noted that focusing on the status of the obligation is a reasonable standard to determine whether the activity directed at the consumer was servicing or collection. *Schlosser* at 538.

Capital Corp also argues that the plaintiff must demonstrate that the company shares an interdependence with the direct debt collector {Asset Acceptance} that renders them a single economic enterprise. [Memo p.11]  Plaintiff finds this argument in federal court troubling in light of the representations Asset Acceptance Capital Corp. made to the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934.  Although this is not a motion for summary judgment, Wisniewski believes it must bring to this Court's attention the statement made at page 6 in the quarterly report for the period ending March 31, 2006,  [attached hereto as as Exhibit 2] Asset Acceptance Capital Corp. made the following statement titled "Notes to Consoidated Financial Statements":

**Nature of Operations**

> Asset Acceptance Capital Corp. and its subsidiaries (collectively referred to as the "Company") are engaged in the purchase and collection of defaulted and charged-off account receivable portfolios.

**Reporting Entity**

> The consolidated financial statements include the accounts of Asset Acceptance Capital Corp. consisting of subsidiaries AAC Investors, Inc., RBR Holding Corp. and Asset Acceptance Holdings, LLC and subsidiaries, Asset Acceptance, LLC, Rx Acquisitions, LLC and Consumer Credit, LLC.  All significant intercompany balances and transactions have been eliminated in consolidation.

The plaintiff asserts that  demonstrating  that Capital Corp shares an interdependence with the direct debt collector {Asset Acceptance}  renders them a single economic enterprise has already been done by Capital Corp. in its SEC filing.

ICAA APPLIES TO BOTH ASSET CAPITAL AND ASSET ACCEPTANCE

Defendant's argument attempts to classify themselves and their activity as  not covered by the Act.  The best indicator of the intent of a statute comes from the language itself. *VG Marina Management Corp. v. Wiener*, 371 Ill.App.3d 201,203, 862 N.E.2d 638, 640 (2nd Dist. 2007) The pre-2008 verison of the Act  expressly provides 11 categories of who or what business activities are not covered or subject to the Act and these defendants are not within any of those categories.  Asset Acceptance Capital Corp. is not a bank, abstract company, real estate broker, public officer, licensed attorney, insurance company, credit union, not a loan or finance company, retail store or business under contract with a creditor to notify the creditor's debtor of a debt using only the creditor's name.  The Latin maxim *inclusio  unis est exclusion alterius* {the inclusion of one is the exclusion of another]} applies the 11 expressions by the Act what who or what business activities are not covered by the Act meaning that everything else is covered.   The onus is on Asset Acceptance Capital Corp. to show into which one of the exluded or exempted categories it claims its business belongs.  Couple that with the  representations Asset Acceptance

13

Capital Corp. made to the Securities and Exchange Asset [Acceptance Capital Corp. and its subsidiaries are engaged in the purchase and collection of defaulted accounts] and any argument advanced in the motion and memorandum of law that they are not debt collectors is discredited.

The pre-2008 definition of a collection agency under 225 ILCS 425/3  is any person, association, partnership, corporation that buys accounts, bills or other indebtness with recourse and engages in collecting the same.  Defendants argue that the plaintiff cited the 2008 amendment which  should not apply; however, that argument ignores the ongoing activity which occurred in 2008 (Compl. ¶ 34),  and those acts prior to 2008 would also be covered by 425/3. However,  plaintiff also asserts that because this activity was ongoing and continuous in nature, these defendants are covered by and subject to the 2008 amendment.  Nevertheless, since the Illinois Collection Agency Act also accepts the federal Fair Debt Collection Practices Act definition that a person who regularly collects debts for another is a debt collector, even if he purchases a defaulted debt from another for the purpose of collection on his own behalf, renders this argument moot. (Compl. ¶ 38) In addressing the application of the Act, the Illinois Supreme Court stated the focus is on the improper collectiong practices of collection agencies, not the type of debt owed. *People ex rel Daley v. Datacom Systems,* 146 Ill.2$^d$ 1, 585 N.E.2$^d$ 51, 58 (1991)

Finally,  the very case cited by defendants  cannot be ignored here, namely, "Assignees of debt already in default at the time of assignment("bad debt") are considered debt collectorsshould resulted in the defendanat's argument being rejected.    Scally   v. Hilco Receivables, LLC. 392 F.Supp.2$^d$ 1036,1037 (N.D. Ill. 2005)

14

**WHEREFORE**, the plaintiff, Joan Wisniewski, prays that this Honorable Court deny the defendants motion to dismiss any of the Counts in her complaint for the aforementioned reasons.


James F. Wisniewski


James F. Wisniewski
P.O.Box 2295
Orland Park,  Illinois 60462
708.590-6671

# EXHIBIT 1

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

ASSET ACCEPTANCE, LLC., Assignee of
PROVIDIAN BANK

                        Plaintiff,

    vs.

JOAN WISNIEWSKI

                      Defendant.

Case No.: 04 M1 188227

## THE MOTION TO DISMISS

    NOW COMES defendant, JOAN WISNIEWSKI, by and through her attorney, WILLIAM J. McGANN and moves this Honorable Court pursuant to 735 ILCS 5/2-619(a) 2 & 9 to dismiss the Complaint of the plaintiff, ASSET ACCEPTANCE, LLC., and in support of this motion states as follows:

    1.    Paragraph one of the plaintiff's complaint states that Providian Bank upon application issued a charge card to the defendant. The instrument creating the relationship between the parties, a Cardholder/Customer Agreement which defines the terms of the relationship wherein the defendant was required to make monthly payments was not attached to the complaint. Under Illinois law, any rights or claims the plaintiff is asserting, as well as any defenses the defendant may have are governed by the terms of the instrument that created the relationship between the parties. John J. Calnan Co. v. Talsma Builders, Inc., 77 Ill.App.3d 221, 395 N.E.2d 1076, 1080 (1st Dist. 1979) Moreover, a complaint predicated on the terms and conditions of a written instrument that created the relationship between the parties must be attached to the complaint. 735 ILCS5/2-606. However, here the plaintiff did not attach a copy of the Cardholder/ Customer Agreement as required by 735 ILCS 5/2-606.

2.     The plaintiff's complaint alleges that the plaintiff took an assignment of said account for value, but the plaintiff's  complaint does not identify when that event occurred. The allegations in the plaintiff's complaint are insufficient under Illinois law to state a cause of action so as to confer standing to bring this lawsuit.  Illinois is a fact pleading jurisdiction and fact pleading is mandated by section 735 ILCS 5/2-603 of the Code of Civil Procedure.  Also See: <u>Knox College v. Celotex Corp.</u>, 88 Ill.2d 407, 423-424, 430 N.E.2d 976 (1981); <u>Edelman, Combs and Latturner v. Hinshaw and Culbertson</u>, 338 Ill.App.3d 156, 167-168,  788 N.E.2d 740 (1st Dist. 2003) and <u>Capitol Idem. Corp. v. Stewart Smith Intermediaries, Inc.</u>, 229 Ill.App.3d 119, 593 N.E.2d 872 (1st Dist. 1991)  The plaintiff's complaint is defective in that it substitutes conclusory allegations for facts.

3.     The plaintiff has submitted the affidavit of Mark Hutchins, the outsourcing manager for the plaintiff, but that affidavit does not state that the affiant, Mark Hutchins, has any personal knowledge about the defendant's account or about the assignment.  The affidavit seeks to create the impression that the affiant has personal knowledge about the defendant's account, which is impossible since he is an employee of ASSET ACCEPTANCE, LLC., not of PROVIDIAN BANK.   An affidavit is taken as true when the affiant sets forth well-pled facts, not conclusions or hearsay, and must meet the same requirements as competent testimony. <u>Robidoux v. Oliphant</u>, 201 Ill.2d 324, 775 N.E.2d 987, (2002);  <u>Roe v. Jewish Children's Bureau of Chicago</u>, 339 Ill.App.3d 119, 790 N.E.2d 882 (1st Dist. 2003) and <u>Smith v. United Farm Mut. Reinsurance,</u> 249 Ill.App.3d 686, 619 N.E.2d 263 (5th Dist. 1993)

4.     In a fact pleading state, which Illinois is, a plaintiff is required to plead facts, not conclusions.  To state a valid cause of action, the plaintiff is required to set forth facts of how and when the plaintiff received the assignment and the terms of the valuable consideration necessary to support the assignment, or attach the assignment agreement to the complaint in order to have standing to maintain this lawsuit.   <u>Wagemann Oil Co. v. Marathon Oil Co.,</u> 714 N.E.2d 107, 306

2

Ill.App.3d 562 (1st Dist. 1999) and <u>Martin v. City of O'Fallon</u>, 670 N.E.2d 1238, 283 Ill.App.3d 830 (5th Dist. 1996)  Without satisfying those pleading requirements anyone could claim to be an assignee, and the plaintiff has not demonstrated its standing to bring this action and this case should be dismissed with prejudice.

      **WHEREFORE,** the defendant, Joan Wisniewski, prays that this Honorable Court dismiss with prejudice the plaintiff's complaint for the aforementioned reasons.

William J. McGann

WILLIAM J. McGANN
P.O.Box 220
Lemont, Illinois 60462
630.243-1000
Attorney No. 21901

# EXHIBIT 2

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

---

# FORM 10-Q

(Mark One)

☑ **QUARTERLY REPORT PURSUANT TO SECTION 13 or 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

> For the quarterly period ended March 31, 2006

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

> For the transition period from _____ to _____

Commission file number: 000-50552

# Asset Acceptance Capital Corp.

*(Exact name of registrant as specified in its charter)*

| Delaware | 80-0076779 |
|---|---|
| *(State or other jurisdiction of incorporation or organization)* | *(I.R.S. Employer Identification No.)* |

28405 Van Dyke Avenue
Warren, Michigan 48093
*(Address of principal executive offices)*

Registrant's telephone number, including area code:
(586) 939-9600

Indicate by check mark whether the Registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.

Yes ☑         No ☐

Indicate by check mark whether the Registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Act.

Large accelerated filer ☐    Accelerated filer ☑    Non-accelerated filer ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).

Yes ☐         No ☑

Indicate the number of shares outstanding of each of the issuer's classes of common stock, as of the latest practicable date.

> As of April 27, 2006, 37,205,115 shares of the Registrant's common stock were outstanding.

## ASSET ACCEPTANCE CAPITAL CORP.

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
#### (Unaudited)

### 1. Summary of Significant Accounting Policies

#### Nature of Operations

Asset Acceptance Capital Corp. and its subsidiaries (collectively referred to as the "Company") are engaged in the purchase and collection of defaulted and charged-off accounts receivable portfolios. These receivables are acquired from consumer credit originators, primarily credit card issuers, consumer finance companies, retail merchants, telecommunications and other utility providers as well as from resellers and other holders of consumer debt. As part of the collection process, the Company occasionally sells receivables from these portfolios to unaffiliated companies.

The Company also finances the sales of consumer product retailers located primarily in Michigan and Ohio.

#### Reporting Entity

The consolidated financial statements include the accounts of Asset Acceptance Capital Corp. consisting of subsidiaries AAC Investors, Inc., RBR Holding Corp. and Asset Acceptance Holdings, LLC and subsidiaries, Asset Acceptance, LLC, Rx Acquisitions, LLC and Consumer Credit, LLC. All significant intercompany balances and transactions have been eliminated in consolidation.

The accompanying unaudited financial statements of the Company have been prepared in accordance with Rule 10-01 of Regulation S-X promulgated by the Securities and Exchange Commission and, therefore, do not include all information and footnotes necessary for a fair presentation of financial position, results of operations and cash flows in conformity with U.S. generally accepted accounting principles. In the opinion of management, the accompanying unaudited consolidated financial statements contain all adjustments necessary for a fair presentation of the Company's financial position as of March 31, 2006 and its results of operations for the three month periods ended March 31, 2006 and 2005 and cash flows for the three month periods ended March 31, 2006 and 2005 and all adjustments were of a normal recurring nature. The results of operations of the Company for the three month periods ended March 31, 2006 and 2005 may not be indicative of future results. These consolidated financial statements should be read in conjunction with the audited consolidated financial statements and notes thereto included in the Company's Annual Report on Form 10-K filed for the year ended December 31, 2005.

#### Cash

The Company maintains cash balances with high quality financial institutions. Management periodically evaluates the creditworthiness of such institutions. Cash balances may be in excess of the amounts insured by the Federal Deposit Insurance Corporation.

#### Purchased Receivables Portfolios and Revenue Recognition

Purchased receivables are receivables that have been charged-off as uncollectible by the originating organization and typically have been subject to previous collection efforts. The Company acquires the rights to the unrecovered balances owed by individual debtors through such purchases. The receivable portfolios are purchased at a substantial discount (usually discounted 95% to 99%) from their face values and are initially recorded at the Company's cost to acquire the portfolio. Financing for the purchases is primarily provided by the Company's cash generated from operations and the Company's line of credit.

The Company accounts for its investment in purchased receivables using the guidance provided by the Accounting Standards Executive Committee Statement of Position 03-3 ("SOP 03-3"), "Accounting for Certain Loans of Debt Securities Acquired in a Transfer" and the Accounting Standards Executive Committee Practice Bulletin 6 ("PB 6"), "Amortization of Discounts on Certain Acquired Loans". The provisions of SOP 03-3 were adopted by the Company effective January 2005 and apply to purchased receivables acquired after December 31, 2004. The provisions of SOP 03-3 that relate to decreases in expected cash flows amend PB 6 for consistent treatment and apply prospectively to purchased receivables acquired before January 1, 2005. The Company purchases pools of homogenous accounts receivable and records each pool at its acquisition cost. Pools purchased after 2004 may be aggregated into one or more static pools within each quarter, based on common risk characteristics. Risk characteristics of purchased receivables are assumed to be similar since purchased receivables